## CHARLES GIBBONS

*vs.*

## CONNECTICUT COMPANY

Superior Court     New Haven County     File No. 55130

MEMORANDUM FILED JANUARY 18, 1939.

*Joseph S. Carusi,* of New Haven; *Alfonse C. Fasano,* of New Haven, for the Plaintiff.

*Edwin H. Hall,* of New Haven, for the Defendant.

CORNELL, J.   The particular subject of controversy here is whether plaintiff's (claimant's) incapacity is the result of an accident within the meaning of section 5223 of the General Statutes, Revision of 1930, which arose out of his employment with defendant (respondent).   The specific injury claimed to have been sustained by the plaintiff consists of the aggravation of a heart condition with which the plaintiff had been afflicted, as a result of which incapacity occurred.

The prior existence of the heart condition is not questioned; it had been present since 1932.   Nor is its character questioned; it appears that it was of rheumatic origin and consisted of an injury to the mitral valve.   It was manifested, it seems, by an inability of the valve to pump the blood completely through the heart, as a consequence of which a back-flow or leakage ensued, that, in turn, resulted in deficient circulation.   It is apparently undisputed, however, that the heart muscle proved

itself sufficiently strong during the period from 1932 until on or about August 16, 1936, to discharge the added burden thrust upon it by the damaged valve and that, the deficiency of the latter being thus compensated, the heart was able under ordinary conditions to perform its normal functions. This compensatory effort upon the part of the heart muscle was, however, it appears, a call upon the reserve power of the heart which was, patently, limited and which if exceeded, would produce heart failure.

It seems that such an excess demand upon the heart's reserve power would occur in either of two ways and, of course, as a result of the coincidence of both, viz., (a) because of prolonged lack of rest, or (b) by a physical strain or over-exertion. Plaintiff contends that both of these events transpired while he was engaged in the performance of the duties of his employment and produced a collapse which accounts for his incapacity. Whether that is so, is, of course, a question of fact to be resolved by the commissioner. *Keeler vs. Sears, Roebuck Co.,* 121 Conn. 56, 60; *Henry vs. Keegan,* 121 id. 71; *Manacek vs. McLachlan Hat Co.,* 121 id. 541, 544; *Mages vs. Brown, Inc.,* 123 id. 188, 192; *Ratushni vs. Mutual Aid Unemployment Fund of Waterbury,* 123 id. 405, 407.

The finding interprets the alleged occurrence of the accident as manifested by the "heart trouble" to be "a period of three weeks preceding the seizure of August 16, 1936", and the alleged cause of it to be that plaintiff had driven "a hard steering" bus for excessive hours for some period of time, with consequent exhaustion and heart symptoms. It places emphasis on the two factors mentioned, viz., (1) a hard steering bus and (2) prolonged periods of driving, and, apparently, then concludes that there could have been no causal connection between the conditions of plaintiff's employment and the production of the heart symptoms because it is found (inferentially) that no bus that plaintiff operated was, in fact, hard to steer and that he did not drive a bus "to the extent that he said he did." These factors thus eliminated, the commissioner then concludes that if there was any connection between the plaintiff's heart condition and his work it was "by way of aggravation" and that that could only occur as the result of long hours of labor to support which claim he finds insufficient factual basis in the evidence.

All of this is, however, under the evidence not necessarily

inconsistent with the occurrence of an accident within the concept of the statute (Gen. Stat. [1930] §5223). Thus, testimony produced by the defendant shows that with a few exceptions up to August 11, 1936 (of inconclusive importance) the plaintiff's work consisted almost wholly of the operation of trolley cars. Plaintiff testifies that for a short period prior to August 11, 1936, he was afflicted with exhaustion at the end of his day's labors, followed by intervals of refreshment on the next morning after his night's sleep, but that he lost no time from his employment; that up to this time he was unconscious of any physical ailment and never knew that his heart was affected until about August 16, 1936; that on August 11, 1936, he drove a large bus containing Boy Scouts to New York and on arriving there experienced certain symptoms which, and the coincidence of which, he had not known before. These consisted of great exhaustion, and pains in the arms, neck and chest, all of which were associated with a "pulling down sensation" in his chest and heavy and rapid beating of his heart. The plaintiff attributes these to the fact that the bus was hard to steer and the length of the trip. Even if the vehicle operated with normal ease, it is not impossible that plaintiff's strength, due to a gradual deterioration of his heart's power, had diminished so that what usually would have been an ordinary task assumed the proportions, to him, of a very arduous one. Independent of that, however, there is evidence that he was required to make a heavy expenditure of strength while in New York. Thus, it is stated that after the bus had reached the Battery and following a rest of an hour and a quarter he tried unsuccessfully to park the vehicle near the Aquarium, and found great difficulty in backing and turning it and so was subjected to further strain and exertion; that this experience was repeated after he had driven the bus about a mile to another location; that after another rest of an hour and a quarter he drove the bus back to New Haven; and that when he arrived at New Haven, he was "all worn out" so that he could not eat and the pain and "pulling down sensation" in his chest prevented his sleeping for two or three hours after he retired.

These symptoms, although plaintiff, according to his account, had never been subjected to certain of them before, remained with him in acute form between the date when he says they first occurred, viz., August 11, 1936, until his collapse on August 16, 1936. The narration of his experiences from

the time he left New Haven on August 11, 1936, with the exception that the bus was a hard steering one, seems not to be disputed by any evidence in the record and as to the latter circumstance is rejected apparently only because the plaintiff failed to make complaint of the difficulty in steering the bus. to any person representing the defendant, although he testi- fies that he mentioned it to certain of his fellow employees.

Even though the bus was not hard to steer, it does not. necessarily follow that the plaintiff did not strain or over-exert himself on the trip from New Haven to New York to an ex- tent which decompensated his heart by an excess demand upon its reserve power and that this was climaxed by his efforts to park the bus on the two occasions mentioned in New York, to the point of an impending heart failure which latter even- tuated on August 16, 1936. The commissioner's disbelief in the plaintiff's claim that the latter drove a "hard steering" bus for excessive hours and in his contention that he operated a bus to the extent that he testified he did, or that his heart con- dition was aggravated by fatigue caused by alleged long hours of work, does not under all of the evidence, dispose of the ques- tion, whether an accident occurred within the conception of the statute, referable to a definite time and place (Stier vs. Derby, 119 Conn. 44, 49; Lemieux vs. Highland Dairy Co., Inc., 121 id. 483); nor does the fact that when it occurred, if it did, the plaintiff's heart was in a weakened condition due to natural causes, and therefore, particularly susceptible to injuri- ous effects from physical strain or over-exertion, necessarily preclude the occurrence of an accident within the comprehen- sion of the statute, if the effect of such occurrence was to excite or aggravate plaintiff's heart condition to a collapse at a time earlier than would have been the case had such event not taken place. Bratz vs. Maring, Jr., Inc., 116 Conn. 186, 191; Hartz vs. Hartford Faience Co., 90 id. 539, 543; Richardson vs. New Haven, 114 id. 389, 392.

The commissioner, perhaps, did not give consideration to the events of August 11, 1936, as possibly or probably, as the case may be, constituting an accident, because the evidence shows that the then counsel for the plaintiff specifically stated during the hearing that he placed no reliance "on the New York trip" as of importance in the inquiry of whether an accident occurred (Transcript p. 31). While, undoubtedly, the commis- sioner was entitled to give consideration to the expressed opin-

ion of counsel, it would seem that in the light of the broad purposes of the Act, he would not be justified on that account in excluding the evidence in question from consideration but would, notwithstanding, remain under the obligation of finding all the material facts presented by the evidence as he viewed the latter.

There is a complete absence in the finding, of any facts relating to the events of August 11, 1936, and the days following. There is reason to infer that this occurs because, by reason of plaintiff's counsel's views of them as having no significance, the evidence concerning plaintiff's experiences during that period was not considered. At any rate, it would appear that it should have been and the facts found therefrom incorporated in the finding. The lack of such facts precludes the possibility of a complete consideration and just disposition of plaintiff's claims.

This requires that the cause be remanded for further hearing as to whether what took place during the day of August 11, 1936, and in the period following up to and including August 16, 1936, inclusive, constituted an accident within the concept of section 5223 of the General Statutes, Revision of 1930, arising out of plaintiff's employment with defendant, which formed a proximate cause of his incapacity either as aggravating his heart condition as it was just prior to August 11, 1936, or otherwise. *Rossi vs. Jackson Co.*, 117 Conn. 603, 605; *Kenyon vs. Swift Service Corp.*, 121 id. 274, 280; *France vs. Munson*, 123 id. 102, 106.

In view of such circumstances, it is unnecessary at this time to consider the reasons of appeal relating to claimed corrections of the finding or what disposition should be made of the appeal from the award as based upon the finding as it stands. *France vs. Munson, supra.*

Cause remanded for further proceedings in accordance with directions.