SCHNEYDER *v.* GENERAL MOTORS CORP.

1. WORKMEN'S COMPENSATION—MENTAL DISTURBANCE—EVIDENCE.
Testimony *held,* to disclose that mental derangement of employee who had been injured resulted from disappointment in failing to obtain compensation and brooding over an imagined wrong.

2. SAME—MENTAL DISTURBANCE DUE TO COLLATERAL CAUSES.
    Mental disturbance which is collateral to injury of employee and
      did not arise directly from it but is due to worry, anxiety, or
      brooding over the accident and his failure to obtain compen-
      sation for it is not compensable.

POTTER, NORTH, and MCALLISTER, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted January 4, 1939. (Docket No. 28, Calendar No. 40,251.) Decided June 5, 1939. Rehearing denied July 6, 1939.

Nick Schneyder, by Joseph A. Storms, his guardian, presented his claim for compensation against General Motors Corporation (Cadillac Motor Car Division), for injuries sustained while in defendant's employ. On petition of Joseph A. Storms, guardian, for further compensation. Award to plaintiff. Defendant appeals. Award vacated.

*Dann & Atlas,* for plaintiff.

*J. G. Stevenson* and *E. C. McDonald,* for defendant.

BUSHNELL, J. On a former appeal in this cause the majority of the court were of the opinion that the department of labor and industry had not passed upon the question of whether and how far plaintiff's disability was the direct result of the physical injury to his foot, "excluding the consequences of mental disturbances collateral to and not arising directly from the physical hurt." *Schneyder* v. *Cadillac Motor Car Co.,* 280 Mich. 127, 130.

The former award was vacated and the cause was remanded for reconsideration in conformity with the opinion of the court. The factual aspects of the case and the views entertained by the writer of this opinion in that appeal are reported in the same vol-

ume at page 132. Justices WIEST and SHARPE concurred with the majority in remanding the cause for reconsideration but with certain qualifications. They said that the case could not be classified with the authorities cited in the minority opinion, where awards were affirmed for neurasthenia directly occasioned by physical injuries or severe shock, and they suggested that:

"The instant case goes into another field and, if affirmed, sanctions compensation for subsequent mental derangement resulting from disappointment and brooding over an imagined wrong."

In further expression of their view of the case they quoted at length from *Kowalski* v. *Railroad Co.,* 116 Conn. 229 (164 Atl. 653, 86 A. L. R. 957).

Upon reconsideration by the department the former order of the department was vacated and the cause was referred to a deputy commissioner in order that testimony could be submitted and a new award entered. The order of reference confined the taking of testimony to the question as to whether the accident had a direct effect upon the plaintiff's nervous system and required the deputy to determine whether or not plaintiff's mental disturbance was a direct result of the accidental injury or whether it was collateral to the injury, and also whether or not plaintiff's disability was due to worry, anxiety or brooding over the accidental injury.

After receiving such testimony the deputy commissioner found that "plaintiff's mental condition was and is definitely connected with and not collateral to the injury to plaintiff's right foot which occurred on August 3, 1928, while in the employ of defendants and that the mental condition arising from said accident has resulted in a continuing disability. The deputy commissioner further finds that

the testimony presented at the hearing held on September 10, 1937, lends additional support to the foregoing finding.''

A new award for total disability was affirmed by the department and we again granted leave to appeal. The different views expressed by the members of the court in the former appeal required a most thorough discussion of the present appeal, with the result that the majority of the court are of the opinion that the testimony discloses (to use the words of Mr. Justice Wiest in the former case) ''subsequent mental derangement resulting from disappointment and brooding over an imagined wrong.'' The majority are of the opinion that the law as stated in *Kowalski* v. *Railroad Co., supra,* and quoted in Mr. Justice Wiest's former opinion, should be applied to the facts disclosed in the instant record and that it is manifest that plaintiff brooded over his inability to obtain compensation until he became insane. To apply the classification stated in the former majority opinion, under the record in this appeal the present mental disturbance of plaintiff is collateral to the injury and did not arise directly from it but is due to worry, anxiety, or brooding over the accident and plaintiff's failure to obtain compensation for it.

We therefore hold that plaintiff is not entitled to receive compensation for his present condition. The award of the department of labor and industry is vacated, with costs to appellant.

Wiest, Sharpe, and Chandler, JJ., concurred with Bushnell, J.

Potter, J. (*dissenting*). This case was here once before, *Schneyder* v. *Cadillac Motor Car Co.,* 280 Mich. 127, where the facts sufficiently appear and the law of the case was established. It was there said:

"The case presents the question whether and when disability arising from a mental disorder growing out of an accident is compensable.

"In 86 A. L. R. 961, note, the cases are collected. It is said there does not seem to be any general rule governing such conditions but 'generally no award will be made where the chain of causation is broken.' However, the authorities plainly indicate the logical distinction:

"(1)   Where the accident has a direct effect upon the nervous system, all the results thereof, both physical and mental, go to make up disability and determine compensability;

"(2)   But where the mental disturbance is collateral to the injury, does not arise directly from it but is due to worry, anxiety or brooding over the accident or its effect or compensation for it, or the like, it is not compensable.

"In the instant case the distinction was not kept in mind in the presentation of testimony nor in the opinion of the department.   The department found the fact of total disability without a proper regard for the applicable rule of law.   The issue is whether and how far plaintiff's present disability is the direct result of the physical injury to his foot, excluding the consequences of mental disturbance collateral to and not arising directly from the physical hurt."

It was held that because the issue before the department had not been adjudicated by it, the case should be remanded thereto for reconsideration. Upon such reconsideration, the department said:

"In accordance with the said decision and opinion of the Supreme Court, we have reconsidered the evidence with the view to determining whether or not the plaintiff's mental disturbance is collateral to his injury or is directly the result thereof.   The court specified that 'if the mental disturbance does not arise directly from the accident but is due to worry, anxiety or brooding over the accident or its effect

or compensation for it, it is not compensable. However, if the accident had a direct effect upon his nervous system, all the results thereof, both physical and mental, go to make up disability and determine compensability.'

"In determining the question herein involved, it is significant that Dr. Henry A. Reye, who examined the plaintiff on behalf of the defendant company and later testified on behalf of the defendant in this case, found plaintiff to be suffering from a traumatic neurosis at the time of his examination in September of 1928. This finding was made in the month following that in which the accident occurred and before the development of any litigation with respect to payment of compensation. It indicates that the mental disorder did not arise from worry, anxiety or brooding over his compensation litigation. It is further significant that, although without any apparent disabling condition in his leg, plaintiff has used it but little since the accident. The natural inference is that plaintiff's disorder had its inception in the injury. Otherwise, there is no explanation for the disuse of said leg following immediately thereafter. Dr. Perry C. Robertson, plaintiff's witness, stated that in his opinion the accident had stimulated and enhanced plaintiff's condition. Dr. Ira M. Altshuler, also plaintiff's witness, in answer to a question concerning the connection between plaintiff's neurosis and the accident, testified as follows: 'The connection is in this physical aspect as well as in the mental aspect. Physically, there was a wound and injury and, mentally he was continually dwelling on such.' He also stated: 'I think that the accident has a direct relationship with the precipitating of his present mental condition. I emphasize the word precipitating, as the content of his delusional revelations centers along the nucleus of the accident with whatever subsequent conclusions the accident has brought about.' Dr. Reye, defendant's witness, in answer to the question, 'It is your opinion the accident precipi-

tated an already existing mental condition?' replied as follows: 'That is my opinion.'

"In citing the above considerations, we believe the conclusion is unescapable that the accident had a direct effect upon plaintiff's nervous system and was the precipitating cause of his subsequent mental disorder and disability. The disorder manifested itself too early following the injury to have been caused by the operation of collateral forces. The issue framed by the Supreme Court is, therefore, determined favorably to the plaintiff and the award of deputy commissioner Palliaer, entered on June 27, 1935, giving plaintiff compensation at the rate of $18 per week for total disability from April 1, 1931 to June 20, 1935, and until the further order of the department, is affirmed."

The finding of the department was that plaintiff is suffering from traumatic neurosis,—a nervous disease, a functional disorder of the nervous system not dependent on any discernible lesion but which resulted from an injury. Dorland's American Illustrated Medical Dictionary (17th Ed.), pp. 912, 913.

The question whether plaintiff was suffering from such injury was a question of fact. The finding of the department is amply supported by the testimony.

The order of the department should be affirmed.

NORTH and MCALLISTER, JJ., concurred with POTTER, J. BUTZEL, C. J., did not sit.