STATE EX REL. MESSNER, Appellant, v. MILWAUKEE COUNTY CIVIL SERVICE COMMISSION, Respondent.

*No. 257. Argued November 1, 1972.—Decided November 28, 1972.*
(Also reported in 202 N. W. 2d 13.)

442

For the appellant there was a brief by *Joseph J. Shutkin* and *Kenneth F. Pedersen,* both of Milwaukee, and oral argument by *Mr. Shutkin.*

For the respondent there was a brief by *Robert P. Russell,* corporation counsel, and *Robert G. Polasek,* assistant corporation counsel, and oral argument by *Mr. Polasek.*

HEFFERNAN, J.   Patricia Messner claims that she was denied due process of law because the written complaint was insufficient to give her proper notice of the charges against her. The complaint alleged that she violated Rule VII, sec. 4, para. J, of the Milwaukee County Civil Service Commission rules and:

"From December 25, 1970, and thereafter she arrived at her home on a regular basis on or about 2:30 P.M. and 3:00 P.M. and deliberately indicated on her time card that she had worked until 4:30 P.M. on such occasions. Her time cards were deliberately falsified on these occasions."

Patricia Messner does not argue that the notice failed to apprise her of the particular acts allegedly committed. Rather, she claims that the charges failed to set forth the legal basis for imposing discipline as a consequence of these acts. Rule VII, sec. 4, para. J, of the Milwaukee County Civil Service Commission regulations referred to in the complaint states that an employee's violation of any reasonable regulation made by his superior officer is cause for discharge when such violation results in a loss to the county.[1]  While the complaint against Patricia

[1] "(J) has violated any lawful and reasonable official regulation made or given by his superior officer, where such violation or

Messner does not specify the work rule or regulation violated, sufficient evidence of a properly promulgated work rule and its violation was produced at the hearing before the commission.

At the hearing there was evidence to show that Patricia Messner's department head had distributed a detailed regulation specifying that each employee was responsible for the keeping of an accurate time card. The regulations were distributed through regular channels of administration while Patricia Messner was an employee. She at no time has denied that she received a copy of these regulations. We are satisfied that the proof of the existence of these regulations and the regularity of their manner of circulation to the employees, including Patricia Messner, provided the connective link between the commission regulation invoked and the specific acts she was charged with having committed.

Patricia Messner claims, however, that since the regulation was not cited nor referred to in the charges, she had no way of knowing until the hearing how her employer proposed to establish a connective link between the acts charged and the commission regulation that was invoked to dismiss her. She contends there was insufficient notice that the commission would rely upon the regulation.

In *State ex rel. Richey v. Neenah Police & Fire Comm.* (1970), 48 Wis. 2d 575, 180 N. W. 2d 743, we said that, where a police and fire commission was involved in an administrative procedure for the dismissal of a police officer, it was performing a quasi-judicial function and that the requirements of due process were applicable. This court in *Richey*, at page 580, restated the due process requirements:

failure to obey amounted to an act of insubordination or a serious breach of proper discipline or resulted, or might reasonably have been expected to result, in loss or injury to the county, to prisoners or wards of the county, or to the public . . . ."

" '(1) [T]he right to seasonably know the charges or claims preferred; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel.' "

Undeniably, Patricia Messner was afforded a proper hearing and had counsel to represent her. Her only due process claim is that she was denied proper notice. However, due process is not to be measured by rigid and inflexible standards. The United States Supreme Court in *Cafeteria Workers v. McElroy* (1961), 367 U. S. 886, 895, 81 Sup. Ct. 1743, 6 L. Ed. 2d 1230, stated, "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."

The degree of procedural rigor required in a proceeding varies from one case to another and depends upon the particular facts and upon the weight to be afforded to private interests as contrasted to governmental interests in the circumstances. *Boddie v. Connecticut* (1971), 401 U. S. 371, 378, 91 Sup. Ct. 780, 28 L. Ed. 2d 113; *Goldberg v. Kelly* (1970), 397 U. S. 254, 263, 90 Sup. Ct. 1011, 25 L. Ed. 2d 287. These general observations are applicable to the notice requirements of due process which "will vary with circumstances and conditions." The notice requirement of due process cannot be defined with any "rigid formula." *Walker v. Hutchinson City* (1956), 352 U. S. 112, 115, 77 Sup. Ct. 200, 1 L. Ed. 2d 178. *Mullane v. Central Hanover Trust Co.* (1950), 339 U. S. 306, 70 Sup. Ct. 652, 94 L. Ed. 865, stressed the reasonableness requirement of notice and stated (p. 314) that the notice requirement is such that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

In *State ex rel. Richey, supra,* page 582, this court held that a general allegation charging a policeman with "conduct unbecoming an officer" gave sufficient notice.

We said therein that charges "need not be technically drawn nor meet the requirements of a criminal indictment." The defect arguably present in *Richey* and urged by the dissent, that there was not a particularization of the acts charged, is wholly absent from the instant case. In this case, the charges were specific and the employee was notified with particularity of the acts she was alleged to have committed. Patricia Messner was aware of the factual allegations she would have to disprove in order to set aside the proposed order of discharge. No attempt has been made to demonstrate that her ability to defend herself was in any way impaired by the failure of the charges to recite the provisions of the regulation, the knowledge of which she has never denied. The complaint gave sufficient notice.

By way of defense, Patricia Messner would also invoke Work Rule IX, which prescribes a series of progressively more serious sanctions to be used against an employee.[2] It is argued that this work rule afforded the exclusive remedy of the county, and that under that rule it was first obliged to give her warning—that only if an infraction was repeated three times could disciplinary action follow. She contends that the resort to disciplinary and discharge procedures, without having first invoked the warning provisions under Rule IX, deprived her of

---

[2] "IX. *Enforcement of Rules.*

"The employe's immediate supervisor is responsible for enforcing the above rules. Procedure is as follows:

"A. If an infraction of the rules occurs, the employe's immediate supervisor discusses this with the employe and suggests ways to resolve the problem.

"B. If the infraction is repeated, the supervisor is required to write up the results of the conference with the employe. Copies of this report are given to the employe, to the Bureau or Division Supervisor and to the Bureau of Personnel for inclusion in the employe's personnel file.

"C. If there are continuing infractions, the employe is given a written warning which will note that further infractions will result in disciplinary action. Copies of this warning are distributed as outlined in Step B."

due process. She buttresses this argument with no authority, and it is clear that the failure of the county to initially resort to Rule IX does not vitiate any element of the due process procedures that were afforded her. Moreover, the underlying facts of record demonstrate that it was not unreasonable to proceed directly to disciplinary procedures. The admonitory procedures of the work rule might well be appropriate in the case of a first and trivial infraction. However, the evidence that confronted the head of the department on this occasion was sufficient to apprise him that serious and deliberate infractions to the detriment of the county had occurred over a very considerable length of time.

Moreover, the work rule is only applicable to procedures to be followed by an employee's immediate supervisor. It does not preclude the head of the department—in this case Arthur Silverman—from taking the action authorized by statute.

Sec. 63.10 (1), Stats., provides that the chief executive officer of a department if he:

". . . believes that an officer or employe in the classified service in his . . . department has acted in such a manner as to show him to be incompetent to perform his duties or to have merited demotion or dismissal . . . shall report in writing to the civil service commission setting forth specifically his complaint, and may suspend the officer or employe at the time such complaint is filed."

Under the interpretation of Work Rule IX urged by Patricia Messner, a department head, irrespective of the seriousness or gravity of the infraction, would be obligated to give three admonitions prior to invoking any disciplinary measures. Such an interpretation would be in derogation of the clear authority of the department head as conferred by statute and would be patently unreasonable.

Patricia Messner also argues that she was denied due process in that, as she asserts, the record shows she

was summarily discharged by Silverman prior to any hearing before the commission. She bolsters this argument by pointing to her time card, which bears the notation, "Terminated effective 3–9–71." There was no evidence to indicate when this handwritten notation was placed upon the time card or by whom it was written. In any event, that writing was a legal nullity and in no way goes to the merits of the case. At the most it could be argued only that it indicated Silverman's intention to discharge her on that date. However, the testimony of Patricia Messner herself is to the contrary, for she testified that on the day of her interview with Silverman he stated not that she was terminated but that she was "suspended pending a discharge."

Counsel for Patricia Messner argues, however, that, even if Silverman's action be construed as a suspension and not as a premature attempt at discharge, the suspension was void because the statute provides: "Nothing in this subsection shall limit the power of the department head to suspend a subordinate for a reasonable period not exceeding 10 days." Patricia Messner was suspended from March 9, 1971, until the date of discharge on May 10, 1971. It is clear, however, that, when sec. 63.10 (1), Stats., is read in its entirety, the section to which counsel refers limiting a suspension to ten days is applicable to a disciplinary suspension only where the infraction is not of the type where dismissal charges are to be filed. It contemplates a limited form of intra-departmental discipline without prior resort by the department to the commission. The same subsection provides that, where a complaint is made to the civil service commission on the ground that the conduct of an employee merits dismissal, the department head "may suspend the officer or employe at the time such complaint is filed." Sec. 63.10 (1) does not limit the period of suspension where charges allegedly warranting dismissal are pending before the commission and the commission's complaint has been issued. It was under this statutory authority

that Patricia Messner was suspended pending a hearing for discharge.

Patricia Messner also argues that the evidence was insufficient to support a finding of conduct warranting a discharge. In *LeBow v. Optometry Examining Board* (1971), 52 Wis. 2d 569, 575, 191 N. W. 2d 47, we stated, "On certiorari the question is whether the evidence was such that the [agency] might reasonably make the order or determination in question." The evidence adduced at the hearing, if believed, was sufficient to support the discharge.

The county's witnesses testified that Patricia Messner admitted that she had returned home early (2:30 to 3 p.m.) on at least two occasions each week during the period from Chirstmas of 1970 to the date of her suspension. Patricia Messner denies that she made such admission and acknowledges only that she absented herself from work on two occasions during that entire period without properly amending her time card.

This court has repeatedly held that the credibility of witnesses in an administrative adjudication is within the province of the finders of fact and the agency's findings on credibility will not be reviewed by a writ of certiorari. *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 260, 111 N. W. 2d 198; *LeBow, supra,* page 576. The commission could properly deny credence to Patricia Messner's assertions at the hearing and believe the county's witnesses. The findings made by the commission were those that could reasonably have been made on the basis of the evidence produced at the hearing.

We conclude that Patricia Messner was denied no element of due process in the course of her hearing and that the evidence accepted as credible was sufficient to support its findings.

In respect to the action of the trial court dismissing the petition of Patricia Messner, we note that a return to the writ of certiorari had been made and the record

brought to the court was reviewed by it. Accordingly, the trial court's order should have been denominated either as an order affirming the action of the commission or, more appropriately, as an order quashing the writ of certiorari. *State ex rel. Posbrig v. Daubner* (1901), 111 Wis. 671, 673, 87 N. W. 802; *State ex rel. Gray v. Oconomowoc* (1899), 104 Wis. 622, 628, 80 N. W. 942; 4 Bryant, *Wisconsin Pleading and Practice* (2d ed.), p. 415, sec. 727. To that extent, the trial court's order is modified.

*By the Court.*—Order modified and, as modified, affirmed.